UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | Criminal No. 3:23-CR-00014-DJH |
| BRYAN D. CONLEY | DEFENDANT |

## NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER ACTS UNDER FED. R. EVID. 404(b) AND MOTION TO ADMIT EVIDENCE OF OTHER ACTS, *RES GESTAE*, AND INEXTRICABLY INTERTWINED EVIDENCE
– *Filed Electronically* –

The United States respectfully states its intention to introduce in its case-in-chief evidence of uncharged conduct and other conduct in which the defendant engaged. As specified in further detail below, the United States seeks to introduce evidence: (1) that the defendant communicated through his cellular device using third party applications that created additional telephone numbers, in addition to his Mobile Station International Subscriber Directory Number (MSISDN) obtained through Verizon, and posed as people other than himself, and (2) that the defendant produced and possessed child sexual abuse material ("CSAM") of victim A.Y. To the extent that this evidence does not constitute *res gestae* or is not inextricably intertwined with the charged offense, the United States tenders this Notice of Intent in accordance with Fed. R. Evid. 404(b)(2). The United States also respectfully moves this Court to enter an *in limine* order authorizing the government to introduce this evidence in its case-in-chief.

### INTRODUCTION

Beginning in November 2018, the defendant, Bryan Douglas Conley, used aliases, invented a third party, and the online dating application Plenty of Fish ("POF") to lure and mislead victims for sexual activity. He then used his vehicle to transport these victims interstate. Finally, and when confronted by law enforcement, the defendant blames the invented third party for any misconduct or as an excuse for his conduct.

A grand jury indicted Conley on February 7, 2023 in the Western District of Kentucky. DN 4. Counts 1 and 2 charges the defendant violation of 18 U.S.C. Section 2421(a) (Mann Act) and 18 U.S.C. 2423 (Interstate Transportation of a Minor) in which the defendant transported a minor victim between November 8 to November 12, 2018 interstate with the intent the minor victim engage in prostitution and production of visual images of the minor engaging sexual activity. Count 3 charges Kidnapping by Inveigle and Decoy (18 U.S.C. Section 1201(a)(1) of a second victim in late January 2019. Conley was also charged with Bank Fraud (18 U.S.C. 1344), Aggravated Identity Theft (18 U.S.C. 1028A), and ten counts of Interstate Threats (18 U.S.C. 875(c) relating to text message threats sent to the second victim's elderly parents with ransom demands, all of which occurred during the course of the kidnapping.

Before and during the charged conduct, the defendant used third party cellular device applications to communicate. Specifically, the defendant used TextNow and TextMe, which are VoIP (Voice over Internet Protocol) services that allow users to text and call. TextNow and TextMe provides the user with a real phone number which can be used on any smartphone, tablet or desktop computer with an Internet connection.[1] The Voice Over Internet Protocol ("VOIP")[2] numbers provided by TextNow and TextMe are separate numbers from each other and from the MSISDN provided by the defendant's cellular device provider.

Relating to Counts 1 and 2, the defendant, beginning on or about November 8, 2018 contacted A.Y. using POF. The defendant posed as a fictious person named, "Bryant" with the last name "Debeers" or "Debeirs." The defendant then contacted A.Y. using a different telephone number and posed as a different person that was sent at the behest of "Debeers" or "Debeirs" to pick up A.Y. Prior to picking up the A.Y., "Bryant" directed A.Y. to send him CSAM. A.Y. complied and sent "Bryant" two CSAM videos on or about the day the defendant picked up A.Y. The two CSAM videos were later recovered from the defendant's cellular device.

---

[1] https://supportfree.textnow.com/hc/en-us/articles/360000817806-What-is-TextNow-
[2] Voice over Internet Protocol (VoIP), is a technology that allows you to make voice calls using a broadband Internet connection instead of a regular (or analog) phone line.

Relating to Count 3 in January 2019, the defendant again posed as a fictitious person on POF, this time as "Lance," when he contacted R.W. The defendant contacted R.W. using his cellular device but TextMe VOIP number 213-630-0758. In addition to posing as a fictious person, the defendant lied to and misled R.W. claiming that "Lance" was a modeling agent. The defendant then contacted R.W. using a different telephone number and posed as a different person that was sent at the behest of "Lance." This time the defendant posed as "Brian" and used his cellular device but TextNow VOIP number 915-777-3617 when contacting R.W.

Prior to and during the events charged in Counts 1, 2, and 3, the defendant contacted various other individuals using his TextMe and TextNow VOIP numbers and, in doing so, the defendant posed as other individuals. Specifically, the defendant posed as: "Lance," "Cynthia," "Eric," "Detective Maiers," and "Brian." The defendant also communicated with others in group chats in which the defendant comprised two of the three participants, using his TextMe and TextNow VOIP numbers.

MEMORANDUM OF LAW

A. <u>The Evidence Sought to Be Introduced is *Res Gestae* and/or Inextricably Intertwined Evidence</u>

At trial, the United States will seek to introduce evidence that: (1) that the defendant communicated through his cellular device using third party applications that created additional telephone numbers, in addition to his Mobile Station International Subscriber Directory Number (MSISDN) obtained through Verizon, and posed as people other than himself, and (2) that the defendant produced and possessed child sexual abuse material ("CSAM") of victim A.Y.

Rule 404(b) of the Federal Rules of Evidence does not apply to bar background evidence, often referred to as *res gestae*. <u>United States v. Hardy</u>, 228 F.3d 745, 748 (6th Cir. 2000). Similarly, evidence that "is 'inextricably intertwined' with evidence of the crime charged," <u>United States v. Everett</u>, 270 F.3d 986, 992 (6th Cir. 2001) (quoting <u>United States v. Barnes</u>, 49 F.3d 1144, 1149 (6th Cir.1995)), or evidence of acts that are "intrinsic" or "part of a continuing pattern of illegal activity," <u>Barnes</u>, 49 F.3d at 1149 (6th Cir. 1995), does not implicate Rule 404(b). Evidence falling within this exception is limited to that which

"has a causal, temporal or spatial connection with the charged offense," such as evidence that "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." Hardy, 228 F.3d at 748.

In this case, the evidence of the defendant using two additional VOIP telephone numbers to communicate from his cellular device is intrinsic to the charged offenses or otherwise part of a continuing pattern. In addition, evidence that the defendant possessed and produced CSAM of A.Y. is directly probative of Counts 1 and 2, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense.

B.     The Evidence Sought to Be Introduced is Admissible Under Rule 404(b)

To the extent that evidence discussed above does not constitute *res gestae* or is not inextricably intertwined with the charged offenses, the United States tenders this Notice of Intent in accordance with Fed. R. Evid. 404(b)(2). The Court may admit evidence of uncharged conduct under Rule 404(b) to prove relevant facts other than the defendant's character. See Fed. R. Evid. 404(b). More specifically, the court may admit evidence of uncharged conduct under Rule 404(b) for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . ." Id.

In ruling on the admissibility of 404(b) evidence, the trial court must determine that act in question occurred, that the evidence is admissible for a proper purpose, and that the probative value of the evidence outweighs its potential prejudicial effects. See United States v. Johnson, 27 F.3d 1186, 1190 (6th Cir. 1993); United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir. 1985); United States v. Dabish, 708 F.2d 240, 242 (6th Cir. 1983). Evidence of other misconduct becomes unfairly prejudicial if "the jury's decision will be based upon improper factors, notably the character and past conduct of the accused, rather than upon the evidence presented on the crime charged." United States v. Vance, 871 F.2d 572, 577 (6th Cir. 1989); see also United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986) ("'[u]nfair prejudice,' as used in Rule 403, does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis").

1. There Is Sufficient Evidence the Other Acts Occurred

As noted, the first determination a court must make before admitting other-act evidence under Rule 404(b) is whether there is sufficient evidence that the other act occurred. The standard of proof is low: the government is not required to prove the other act beyond a reasonable doubt, by clear and convincing evidence, or even by a preponderance of the evidence. United States v. Bell, 516 F.3d 432, 441 (6th Cir. 2008) (citing Huddleston, 485 U.S. at 689). The government need submit only enough evidence to support a reasonable finding that the defendant committed the other act. Id.

Here, a digital forensic examiner will testify and explain that both items of evidence are derived from a review of the defendant's cellular device. See United States v. Bonds, 12 F.3d 540, 572 (6th Cir. 1993) (finding that testimony from single eyewitness "amply support[ed]" a finding that the other act occurred).

2. The Evidence Is Being Offered for a Permissible Purpose

The second determination a court must make before admitting other-act evidence under Rule 404(b) is whether it is offered for a permissible purpose: i.e., that "it is probative of a material issue other than character." United States v. Cox, 957 F.2d 264, 267 (6th Cir. 1992) (quoting Huddleston, 485 U.S. at 689). In this case, the evidence proposed by the United States falls squarely within the exceptions outlined in Fed. R. Evid. 404(b)(2), including identity, modus operandi, and, common plan or scheme.

3. The Probative Value of the Evidence Outweighs the Danger of Unfair Prejudice

Finally, the third determination a court must make before admitting other-act evidence under Rule 404(b) is whether its probative value is substantially outweighed by the danger of unfair prejudice. Cox, 957 F.2d at 267. Courts consider several factors in weighing the probative value of 404(b) evidence against its prejudicial effect.

One factor is the evidence's overall significance to the case. Courts have cautioned that "404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." United States v. Perez-Tosta, 36 F.3d 1552, 1562 (11th Cir. 1994). The Sixth Circuit has stated that the centrality of the issue for which the 404(b) evidence was admitted weighs in favor of admission. See

United States v. Vance, 871 F.2d 572, 576 (6th Cir. 1989) ("[A]n important indication of probative value of evidence is the prosecution's need for the evidence in proving its case."). Another factor is the amount of time elapsed between the 404(b) incident and the charged incident. Generally, the probative value of other-act evidence decreases in a linear fashion as time passes. See Ismail, 756 F.2d at 1260. Another factor is the availability of alternative sources of proof. See Bell, 516 F.3d at 445 ("The district court should consider the government's alternative sources of proving intent when weighing the probative value of other acts evidence."). Still another factor is the nature and degree of potential prejudice. Not all prejudice is *unfair* prejudice. "[U]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." Bonds, 12 F.3d at 567. 404(b) evidence is more likely to compel a jury to render its verdict on an improper basis if it is particularly graphic or inflammatory, or if it is more severe in degree than the charged conduct. See United States v. Blair, 225 F.3d 660 (6th Cir. 2000) (unpublished) (noting that evidence of the 404(b) assault "was more 'graphic,' 'horrendous,' and 'emotional'" than evidence of the charged assault). Finally, another factor is the potential for a limiting instruction. The Sixth Circuit, while recognizing that a limiting instruction is not a cure-all, has held that an instruction carefully setting forth the permissible uses of 404(b) evidence mitigates the prejudicial impact, if any, of such evidence. United States v. English, 785 F.3d 1052, 1056 (6th Cir. 2015). A limiting instruction is especially impactful if given before and after the evidence at issue, and again during the jury charge. See United States v. Allen, 619 F.3d 518, 525 (6th Cir. 2010).

  The factors described above militate in favor of admitting the government's proposed evidence in this case. The proposed evidence is inextricably intertwined with evidence of the crime charged and is necessary to the government's case. There is no time lapse between the 404(b) incident and the charged incidents. In fact, the Indiana bank robbery constitutes uncharged conduct which arose out of the same series of transactions as the charged offenses. This is necessary background information to the underlying charges as this conduct by the defendant was essential in helping law enforcement further develop the suspect vehicle and ultimately identify the defendant. Should the Court exclude this evidence, the United

States would be unable to fully explain to the jury how the defendant was identified as the perpetrator of these bank robberies. Although there is certainly a potential for prejudice associated with this evidence, this prejudice can be cured by the Court providing a limiting instruction to the jury to ensure the evidence is not considered for an improper purpose. Moreover, the Sixth Circuit's pattern jury instruction 7.13 Other Acts of Defendant is specifically designed to alleviate any concerns raised by this type of evidence.

## CONCLUSION

Defense counsel and the Court should take notice of the United States' intent to seek introduction of this evidence. Further, for the above-stated reasons, the government respectfully requests an *in limine* order ruling that the above-described evidence is admissible as inextricably intertwined evidence or *res gestae* or, in the alternative, under Rule 404(b).

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

_____
Joel King
Special Assistant United States Attorney
207 Grandview Drive, Suite 400
Ft. Mitchell, Kentucky 41017
(859) 652-7034
joel.king@usdoj.gov

## **CERTIFICATE OF SERVICE**

On March 23, 2022, I electronically filed this document through the ECF system, which will send a notice of electronic filing to all Counsel of record.

_____
Joel King
Special Assistant United States Attorney